UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ANTHONY ARRINGTON,

        Plaintiff,

v.                                                                                  Case No. 2:10-cv-177
                                                                                       HON. GORDON J. QUIST

UNKNOWN WICKSTROM, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

        Plaintiff Anthony Arrington, an inmate currently confined at the Marquette Branch Prison (MBP), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Sergeant Unknown Wickstrom, Resident Unit Officer E. Jacobson, Resident Unit Officer Unknown Snow, and R.N. Janet Haataja. Plaintiff's complaint alleges that on April 18, 2009, while he was confined at the Baraga Maximum Correctional Facility (AMF), Defendant Wickstrom illegally placed him in segregation. Plaintiff filed a grievance on April 21, 2009. On April 29, 2009, Plaintiff signed off on the grievance and was released back into the general population.

        On May 19, 2009, Plaintiff was released from his cell for medication pick up. As Plaintiff approached the stairs, Plaintiff heard Defendant Jacobson make the following statement to Defendant Snow, "It's got to stick." Defendant Snow replied, "We will get him." Defendant Snow then turned to face Plaintiff and asked if he had filed his complaint yet. Plaintiff asked Defendant Snow what he meant and Defendant Snow told Plaintiff to step into the shower for a strip search. As Plaintiff was stripping, Defendant Snow told him that he should not have written the grievance

on Defendant Wickstrom. Plaintiff stated that he intended to file a lawsuit, and Defendant Snow told Plaintiff that he would probably be in segregation and that he hated litigators. Defendant Snow then handed Plaintiff his clothes and walked back towards Plaintiff's cell. Approximately five minutes later, Defendant Jacobson approached the showers and told Plaintiff that filing lawsuits would cause Plaintiff more grief than pleasure. When Plaintiff asked what he meant by that, Defendant Jacobson stated that he would see shortly. Plaintiff was escorted to segregation approximately one hour later.

Defendant Wickstrom subsequently came to Plaintiff's cell with two misconduct tickets, which had been written by Defendant Jacobson. Defendant Wicktrom told Plaintiff that as long as he was at AMF, he would be in segregation. Defendant Wickstrom further stated that staff at AMF were "team players." Plaintiff attaches copies of witness statements by fellow inmates to his complaint as evidence of this exchange.

On July 22, 2009, Defendant Haataja asked Plaintiff who had let him "off observation." Plaintiff stated that the psychologist had, and Haataja said, "I should put you back on [observation] you piece of shit." Plaintiff asked why, and Defendant Haataja replied, "Because I'm a team player and all you do is write grievances." Defendant Haataja then ordered Plaintiff to masturbate in front of her, or else she would write a ticket on him. Plaintiff complied and, when he was finished, she ordered him to do it again. Plaintiff refused and Defendant Haataja then wrote a sexual misconduct ticket on Plaintiff. On July 30, 2009, Defendant Haataja again ordered Plaintiff to masturbate in front of her and, when Plaintiff was unable to ejaculate, she threatened to write a misconduct ticket on him. On August 1, 2009, Defendant Haataja ordered Plaintiff to masturbate in front of her and, when Plaintiff complied, she told him that he would be okay for awhile.

Plaintiff claims that Defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution. Plaintiff is suing Defendants in their individual and official capacities and is seeking compensatory and punitive damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Initially, Defendants assert that Plaintiff's placement in segregation did not violate the Fourteenth Amendment because prisoners do not have a liberty interest in procedures affecting their security classification. Defendants correctly note that the Sixth Circuit has repeatedly found under various circumstances that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See Jones v. Baker*, 155 F.3d 810, at 812-23 (6th Cir. 1998) (two years of segregation while inmate was investigated for murder of prison guard in riot); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (inmate serving life sentence was placed in segregation after serving thirty days of detention for misconduct conviction of conspiracy to commit assault and battery); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir.1997) (one year of segregation after inmate was found guilty of possession of illegal contraband and assault and where reclassification was delayed due to prison crowding). However, Defendants fail to note that Plaintiff is not asserting a violation of his due process rights. Therefore, the court need not address this argument.

Defendant Jacobson asserts that he is entitled to summary judgment on Plaintiff's retaliation claims because his conduct was not motivated by a desire to retaliate against Plaintiff. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing

*Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

Defendant Jacobson initially denies making any of the retaliatory statements alleged by Plaintiff.  In addition, Defendant Jacobson states that the two misconducts he issued on Plaintiff were the result of Plaintiff's own conduct, and not because of any desire to retaliate against Plaintiff.  With regard to the May 19, 2009, possession of contraband misconduct, Defendant Jacobson states that he discovered a razor blade and a four inch piece of wire with a small hook on the end in a vent in Plaintiff's cell during a routine search.  (Defendants' Exhibit B, ¶¶ 4-8.)  Plaintiff received a hearing on this misconduct and was found guilty.  (Defendant's Exhibit B, ¶ 12.)

After discovering the contraband in Plaintiff's cell, Defendant Jacobson went to the A-wing shower where Plaintiff had been placed during the search and ordered Plaintiff to turn around and allow himself to be restrained by staff.  Plaintiff refused, so Defendant Jacobson repeated the order.  When Plaintiff refused a second time, Defendant Jacobson issued a misconduct ticket on Plaintiff.  Plaintiff pleaded guilty to the charge of disobeying a direct order at an administrative hearing.  (Defendants' Exhibit B, ¶¶ 9-11, 13.)  Defendant Jacobson concludes that because Plaintiff's misconduct tickets were the result of his own behavior, they do not support Plaintiff's retaliation claim.

In response to this contention, Plaintiff reiterates the allegations set forth in his complaint.  As noted above, Plaintiff claims that Defendant Jacobson made specific comments indicating that Plaintiff was being penalized for filing grievances.  Plaintiff also asserts that the

contraband allegedly found by Defendant Jacobson in Plaintiff's cell did not belong to Plaintiff. Plaintiff further states that if he is allowed to proceed with discovery in this case, he can show that sergeants at AMF never conduct shakedowns of prisoner cells. Plaintiff also states that other prisoners overheard the exchange between Plaintiff and Defendants and that, with discovery, he could discover their names and obtain witness statements.[1]

The undersigned notes that there is a dispute regarding retaliatory statements made by Defendant Jacobson, as well as regarding whether contraband was planted in Plaintiff's cell by Defendant Jacobson. The fact that Plaintiff pleaded guilty to the disobeying a direct order misconduct does not resolve these issues. Therefore, the undersigned concludes that there is a genuine issue of material fact regarding whether Defendant Jacobson retaliated against Plaintiff which prevents a grant of summary judgment.

Defendants assert that Plaintiff's allegations of verbal harassment by Defendants Snow, Jacobson, and Wickstrom do not rise to the level of an Eighth Amendment violation. Defendants are correct that use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr.

---

[1] The undersigned notes that although Plaintiff claims that summary judgment is premature because he has not yet had discovery in this case, there is no indication that Plaintiff ever requested any discovery.

24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment."). However, Plaintiff does not appear to be asserting such claims. Therefore, the court need not address Defendants' argument on this matter.

Defendant Haataja asserts that she is entitled to summary judgment on Plaintiff's sexual harassment claims. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted). "To prevail on a constitutional claim of sexual harassment, an inmate must therefore prove, as an objective matter, that the alleged abuse or harassment caused 'pain' and, as a subjective matter, that the officer in question acted with a sufficiently culpable state of mind." *Freitas*, 109 F.3d at 1338 (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir.

2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Other courts have held that even minor, isolated incidents of sexual touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate

failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

In support of her claim for summary judgment, Defendant Haataja attests that on July 22, 2009, while she was making rounds on A-wing, she observed Plaintiff standing at his cell window, naked and masturbating. Defendant Haataja attests that Plaintiff knew she was making rounds because the Bubble Officer had announced "health care rounds" and because other prisoners on the wing were yelling "nurse on the rock." Defendant Haataja issued a sexual misconduct on Plaintiff. Plaintiff was found guilty following a hearing. (Defendants' Exhibit H, ¶¶ 5-7.)

Defendant Haataja also offers a copy of the hearing report, which shows that Plaintiff requested video for the first time, stating that the "computer signature" was inadequate for judicial review. Plaintiff did not assert that Defendant Haataja had ordered him to masturbate in front of her during the hearing. (Defendants' Exhibit H, Attachment 2.)

In response to Defendant Haataja's claims, Plaintiff reiterates the facts set forth in his complaint and asserts that Defendant Haataja ordered him to masturbate in front of her on more than one occasion. As noted above, Plaintiff alleges that on July 22, 2009, Defendant Haataja ordered Plaintiff to masturbate in front of her, or else she would write a ticket on him. Plaintiff complied and, when he was finished, she ordered him to do it again. When Plaintiff refused, Defendant Haataja wrote a sexual misconduct ticket on Plaintiff. The fact that Plaintiff was found guilty of masturbating in front of Defendant Haataja is consistent with Plaintiff's version of the facts. Therefore, there is appears to be a genuine issue of material fact regarding this claim.

Defendant Haataja asserts that even if Plaintiff's version of the events is true, the alleged misconduct is not sufficiently serious to rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Haataja ever touched him or had form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Haataja.

However, Defendants fail to address Plaintiff's retaliation claim against Defendant Haataja. As set forth previously, a plaintiff seeking to establish a retaliation claim must show that (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. The undersigned notes that Plaintiff's allegations establish that he was engaged in protected conduct when he refused to masturbate in front of Defendant Haataja and that he received a misconduct ticket as a result. The undersigned concludes that there is a genuine issue of material fact regarding this claim.[2]

Defendants assert that they are entitled to summary judgment on Plaintiff's official capacity claims against them because such claims are barred by the Eleventh Amendment. Any claims against the individually-named Defendants in their official capacities do not state a claim upon which relief can be granted. *See Will v. Michigan Department of State Police*, 491 U.S. 58 (1989) (claims against a state agency or an official in his/her official capacity are claims against the

---

[2]Plaintiff also claims that Defendant Haataja violated his rights under the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures by a representative of the government. *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984). However, this proscription does not apply within a prison cell. Moreover, plaintiff does not allege that defendants performed an unreasonable search or that they "seized" his property. The conduct described by Plaintiff does not constitute a violation of the Fourth Amendment. *Id.*

state, and are not claims against a "person" subject to Section 1983 liability); *Frederick v. Abramajtys*, No. 94-1935, 1995 WL 564321, **1 (6th Cir. Sept. 21, 1995) (unpublished). Moreover, the Eleventh Amendment bars suit against the State or one of its agencies in federal court unless the state has given express consent, regardless of the relief sought. *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), overruled in part on other grounds, *Will*, 491 U.S. 58; *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (State and Board of Corrections).[3] The State of Michigan has not consented to civil rights suits in the federal courts. *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). The Eleventh Amendment therefore bars official-capacity suits for damages against its employees. Therefore, any official capacity claims are properly dismissed.

Defendants also claim Plaintiff's individual capacity claims are barred by qualified immunity because Plaintiff has failed to show a violation of clearly established law. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power

---

[3] The Sixth Circuit has held that since an official capacity suit for retroactive relief, such as monetary damages, is deemed to be against the State, whose officers are the nominal Defendants, the claim is barred by the Eleventh Amendment. *Doe v. Wigginton*, 21 F.3d 733, 736-737 (6th Cir. 1994).

irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*.

In this case, there is an issue of fact regarding whether Defendants retaliated against Plaintiff for his conduct in filing grievances. As noted above, it is well established that retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394; *Smith*, 250 F.3d at 1037. Where there is a genuine issue of material fact as to whether Defendants' conduct was motivated by the desire to retaliate for the Plaintiff's action in filing grievances, Defendants are not entitled to qualified immunity.

In summary, in the opinion of the undersigned, there is an issue of fact regarding whether the Defendants retaliated against Plaintiff. Accordingly, it is recommended that Defendants' motion for summary judgment (docket #26) be denied with regard to Plaintiff's retaliation claims against each of the named Defendants.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

          /s/ Timothy P. Greeley
          TIMOTHY P. GREELEY
          UNITED STATES MAGISTRATE JUDGE

Dated: February 21, 2012